ORDERED.

**Dated:  July 13, 2022**

Roberta A. Colton
United States Bankruptcy Judge

## UNITED STATES BANKRUPTCY COURT
## MIDDLE DISTRICT OF FLORIDA
## JACKSONVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| ZAREPHATH ACADEMY INC., | ) | Case No. 3:21-bk-01792 |
| | ) | |
| | ) | Jointly Administered with |
| APOSTOLIC ASSEMBLIES OF JESUS | ) | Case No. 3:21-bk-01793 |
| CHRIST, INC. | ) | |
| | ) | |
| Debtors. | ) | |

### ORDER (1) CONFIRMING CHAPTER 11 PLAN OF REORGANIZATION SUBMITTED BY ZAREPHATH ACADEMY INC., (2) SETTING DEADLINES, AND (3) SCHEDULING POST-CONFIRMATION STATUS CONFERENCE

THIS CASE came before the Court on June 28, 2022, at 3:00 p.m., for hearing (the "Hearing") on the *Fourth Amended Plan of Reorganization Submitted by ZAREPHATH ACADEMY INC.* (the "Debtor") dated April 6, 2022 (Doc. No. 148, the "Plan") and *Debtor's Confirmation Affidavit* (Doc. No. 161).   The Court finds that the Plan was transmitted to all creditors and interest holders, who were given timely notice thereof and of the confirmation hearing, and the Court further finds that the Solicitation Package (Doc. No. 105) was timely and

properly served on all creditors and parties in interest.   Upon the evidence presented at the hearing, and for the reasons stated orally and recorded in open court, the Court finds that the requirements of confirmation as set forth in 11 U.S.C. § 1191(a) are satisfied.

Accordingly, it is **ORDERED:**

1.      The Plan, as modified by agreement with the Internal Revenue Service, is **CONFIRMED** pursuant to 11 U.S.C. § 1191(a).

2.      A copy of the Modified Confirmed Plan is attached hereto as **Exhibit A**.

3.      The Debtor is granted a discharge under section 1141(d)(1)(A).

4.      Notwithstanding any provision of the Plan, the Plan is confirmed as a consensual subchapter V plan and the applicable sections of the bankruptcy code apply.

5.      The Debtor is authorized to execute all agreements and take all necessary actions to implement the Plan.

6.      The Debtor shall make all Plan payments directly to creditors pursuant to the terms of the Plan.

7.      A schedule of payments to be made pursuant to the Plan is attached hereto as **Exhibit B**.

8.      Pursuant to the Plan and in accordance with 11 U.S.C. § 1146(c), the issuance, transfer or exchange of securities pursuant to the Plan, or the transfer of, or creation of any lien on, any property of the Debtor pursuant to this Plan or pursuant to an Order of the Court, shall not be taxed under any law imposing a stamp tax, transfer tax, recordation tax, or similar tax.

9.      Objections to claims shall be filed within sixty (60) days from the date of this Order.

10.     The Debtor shall file a Certificate of Substantial Consummation and a Motion for Final Decree within fourteen (14) days after the Plan is substantially consummated. *See* Local Rule 3022-1.

11.     If this case remains open more than ninety (90) days after confirmation, the Debtor shall file a report stating: (1) a statement of distribution by class, name of creditor, date of distribution, and amount paid; (2) a statement of transfer of property; and (3) a statement of affirmation that the Debtor has substantially complied with the provisions of the confirmed Plan.

12.     The Debtor shall file with the Bankruptcy Court a financial report or statement of disbursements for each quarter (or portion thereof) that this chapter 11 case remains open, in a format prescribed by the United States Trustee.  These reports shall also include any disbursements made from the sale or refinance of any real property. The Debtor shall also attach to the quarterly report copies of all refinancing and/or sale closing documents for any property sold during the applicable period.

13.     Until the entry of a final decree, the Court retains jurisdiction for any and all matters that may come before the Court in the administration of the Plan and pursuant to this Order, specifically including but not limited to, the jurisdiction to determine all objections to claims; to fix and award all compensation to parties; to hear and determine all questions concerning the assets or property of the Debtor, including any questions

relating to any sums of money, services, or property due to the Debtor; and to determine all matters of any nature or type necessary or appropriate to carry out the Plan.

14.     The Debtor shall file with the Court and serve on all creditors and interested parties notice of the Effective Date of the Plan within three (3) days of the occurrence of the Effective Date

15.     Upon the filing of the notice of the Effective Date, the Sub V Trustee shall file his final report and request for discharge from further trustee duties in accordance with Sec. 1183(c) of the Bankruptcy Code, at which point the Subchapter V Trustee shall be discharged and relieved of all further duties in this Case.

16.     All professional fee applications shall be filed on or before July 26, 2022.

17.     A post-confirmation status conference is set on August 18, 2022 at 9:30 a.m., Courtroom 4C, 4th Floor, Bryan Simpson United States Courthouse, 300 North Hogan Street, Jacksonville, FL 32202, if the case is still pending.


Eric McKay is directed to serve a copy of this order on interested parties who do not receive service by CM/ECF and file a Proof of Service within 3 days of entry of the order.

**<u>Exhibit A</u>**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | |
|---|---|
| In re: ) | |
| ) | Chapter 11 |
| ZAREPHATH ACADEMY INC., ) | Case No. 3:21-bk-01792 |
| ) | |
| ) | Jointly Administered with |
| ) | |
| APOSTOLIC ASSEMBLIES OF ) | Case No. 3:21-bk-01793 |
| JESUS CHRIST, INC. ) | |
| ) | |
| Debtor. ) | |

---

# ZAREPHATH ACADEMY INC'S FOURTH AMENDED
## CHAPTER 11 SUBCHAPTER V PLAN OF REORGANIZATION[1]

**THE LAW OFFICES OF ERIC N. MCKAY**
Florida Bar No. 0010215
3948 3rd Street South, Suite 297
Jacksonville Beach, Florida, 32250-5847
(904) 651-8256
eric@ericmckaylaw.com

Attorney for Zarephath Academy, Inc.

Dated: April 6. 2022

---

[1]   The Fourth Amended Plan is being amended to incorporate comments by the United States Trustee.

I.    Descriptions of Debtor's Business.................................................................1
II.   Locations of Debtor's Operations................................................................2
III.  Reasons for Filing Chapter 11 ...................................................................2
Financial Summaries ....................................................................................2
ARTICLE I DEFINED TERMS, RULES OF  INTERPRETATION AND
COMPUTATION OF TIME ...........................................................................2
    1.1 Defined Terms...................................................................................2
    1.2 Rules of Interpretation and Computation of Time ...............................7
ARTICLE II CLASSES OF CLAIMS AND INTERESTS ................................7
ARTICLE III TREATMENT OF CLAIMS AND INTERESTS ........................8
    3.1 Unclassified Claims ..........................................................................8
    3.2 Unimpaired Classes of Claims..........................................................8
    3.3 Impaired Classes of Claims and Interests .......................................10
ARTICLE IV  MEANS FOR IMPLEMENTATION OF THE PLAN/FEASIBILITY .....10
    4.1 Continued Operations .....................................................................10
    4.2 Corporate Action .............................................................................11
    4.3 Finance Committee for Plan Payments............................................12
    4.4 Preservation of Rights of Action......................................................13
ARTICLE V  TREATMENT OF EXECUTORY CONTRACTS AND LEASES............13
    5.1 Executory Contracts or Leases to Be Assumed or Assumed and Assigned.......13
    5.2 Insurance Policies and Agreements .................................................13
ARTICLE VII  PROCEDURES FOR RESOLVING DISPUTED CLAIMS...................13
    7.1 Prosecution of Objections to Claims ...............................................13
    7.3 Treatment of Disputed Claims .........................................................14
ARTICLE VIII  CONDITIONS PRECEDENT TO EFFECTIVE DATE ........................14
ARTICLE IX  CRAMDOWN ........................................................................14
ARTICLE X  DISCHARGE, TERMINATION AND INJUNCTION .......................14
    10.1 Discharge of Claims......................................................................14
    10.2 Injunction ....................................................................................15
ARTICLE XI  RETENTION OF JURISDICTION .........................................15
ARTICLE XII  MISCELLANEOUS PROVISIONS .......................................15
    12.1 Modification of the Plan ................................................................15
    12.2 Severability of Plan Provisions......................................................16
    12.3 Successors and Assigns.................................................................16
    12.4 No Post-Petition Interest; Penalties, Damages or Fines. ................16
    12.5 No Attorneys' Fees........................................................................16
    12.6 Further Assurance. ........................................................................16
    12.7 Costs of Enforcement. ...................................................................16
    12.8 Section 1146 Exemption:...............................................................17
    12.9 Default by Debtor. .........................................................................17
    12.13 Closing of DIP Bank Account .......................................................17
    12.14 Closing of the Bankruptcy Case ...................................................17
    12.15 Service of Documents...................................................................17
    Certificate of Service .........................................................................18

## INTRODUCTION

THE INFORMATION CONTAINED IN THIS JOINT SUBCHAPTER V, CHAPTER 11 PLAN IS INCLUDED HEREIN FOR PURPOSES OF SOLICITING ACCEPTANCES HEREOF (AS MAY BE AMENDED IN ACCORDANCE WITH THE TERMS THEREOF AND APPLICABLE LAW, THE "PLAN").   THE INFORMATION CONTAINED HEREIN MAY NOT BE RELIED UPON FOR ANY PURPOSE OTHER THAN TO DETERMINE HOW TO VOTE ON THE PLAN.  NO PERSON MAY GIVE ANY INFORMATION OR MAKE ANY REPRESENTATIONS, OTHER THAN THE INFORMATION AND REPRESENTATIONS CONTAINED IN THIS DISCLOSURE STATEMENT, REGARDING THE PLAN OR THE SOLICITATION OF ACCEPTANCES OF THE PLAN.

ALL CREDITORS ARE ADVISED AND ENCOURAGED TO READ THE PLAN IN ITS ENTIRETY BEFORE VOTING TO ACCEPT OR REJECT THE PLAN.

## LIQUIDATION ANALYSIS

**To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation.**

**The Internal Revenue Service is the only creditor to be paid under the Plan.  The Internal Revenue Service's allowed claims equal $817,593.14.**

**As represented in the Debtor's Amended Schedules filed on September 22, 2021, the Debtor's total assets equal $272,622.81.**

**If the Debtor were to liquidate and the Internal Revenue Service recouped the full value of the Debtor's assets, then the Internal Revenue Service would receive only $272,622.81 on its $817,593.14 claim.  It is far more likely that the Internal Revenue Service would receive far less than $272,622.81 if the Debtor were to be liquidated.**

**The Plan pays the Internal Revenue Service in full and thus all creditors and equity interest holders who do not accept the Plan will receive at least as much under the Plan as such claim and equity interest holders would receive in a Chapter 7 liquidation.**

## BACKGROUND

I.    **Descriptions of Debtor's Business**

**Zaraphath Academy Inc.**  Debtor Zaraphath Academy Inc. is a Christian based specialty school founded in 2006 by Bishop James Brant Jr. and his wife, Dr. Denise Brant.  The Debtor provides education to low income students from grades pre-k through 12.   In its role as an education provider, the Debtor fills an essential need to the community and offers students a path forward toward success and self-fulfillment.

## II.    Locations of Debtor's Operations

ZAI operates from its facilities and offices located at 1028 E. 10th Street, Jacksonville, FL 32206 (the "10th Street Property").

## III.   Reasons for Filing Chapter 11

Bishop James Brant Jr. passed away on July 10, 2016.  The loss of Bishop Brant to the Debtor cannot be understated.  His passing created not only a spiritual void but also a material one as financial issues coalesced to imperial the Debtor's very existence.

Specifically, for fiscal year 2017 the Debtor' gross revenues were $1,226,604 and for 2018 they were $858,810.  This decrease in revenue was the result of missed scholarship deadlines.  The loss of approximately $800,000 in revenue placed the Debtor in a financial hole, including $817,593.14 owed to the IRS, that required this case to rectify.

### Financial Summaries

For fiscal year 2017 the Debtor' gross revenues were $1,226,604, with net income (loss) of ($44,584).

For fiscal year 2018 the Debtor' gross revenues were $858,810 with net income (loss) of ($228,390).

For fiscal year 2020 the Debtor' estimated gross revenues were $1,792,869, with net income (loss) of ($41,737).

The Debtor proposes the Plan for the resolution of the outstanding claims against and equity interests in the Debtor.  The Debtor is the proponent of the Plan within the meaning of § 1129 of the Bankruptcy Code.

## ARTICLE I
## DEFINED TERMS, RULES OF
## INTERPRETATION AND COMPUTATION OF TIME

### 1.1    Defined Terms

As used in the Plan, capitalized terms have the meanings set forth below.  Any term that is not otherwise defined herein, but that is used in the Bankruptcy Code or the Bankruptcy Rules, will have the meaning given to that term in the Bankruptcy Code or the Bankruptcy Rules, as applicable.

(1)    **"Administrative Claim"** means a Claim for costs and expenses of administration allowed under §§ 503(b), 507(b) or 1114(e)(2) of the Bankruptcy Code, including: (a) the actual and necessary costs and expenses incurred after the Petition Date of preserving the Estate and operating the business of the Debtor, including Claims based on liabilities

incurred by the Debtor in the ordinary course of its business (b) Professional Fee Claims; and (c) U.S. Trustee Fees.

(2)     **"Administrative Claim Bar Date"** means the date established by Local Rule 3071-1 by which all requests for payment of Administrative Claims are required to be filed with the Bankruptcy Court.

(3)     "Allowed Claim" means:

    (a)     a Claim that (i) has been listed by the Debtor on its Schedules as other than disputed, contingent or unliquidated; and (ii) is not otherwise a Disputed Claim;

    (b)     a Claim (i) for which a proof of Claim or request for payment of Administrative Claim has been filed by the applicable Bar Date or otherwise been deemed timely filed under applicable law and (ii) that is not otherwise a Disputed Claim;

    (c)     a Claim that is allowed: (i) in any stipulation of amount executed by the Debtor and Creditor and any objector to such claim prior to the Effective Date and approved by the Bankruptcy Court; (ii) in any contract, instrument or other agreement or document entered into in connection with the Plan prior to the Effective Date and approved by the Bankruptcy Court; (iii) in a Final Order; or (iv) pursuant to the Plan.

The dollar amount of each Allowed Claim shall be as of the Effective Date and only the amount of each Allowed Claim as provided herein, the Confirmation Order or Final Order, shall be enforceable against the Debtor or their property.

(4)     **"Allowed Class . . . Claim"** means an Allowed Claim in the particular Class described.  Any reference herein to a particular Allowed Claim includes both the secured and unsecured portions of such Claim.

(5)     **"Assets"** means the Property (as defined below) and all property of the Estate within the meaning of § 541 of the Bankruptcy Code, of any nature whatsoever, including, without limitation, all property, real and personal, tangible and intangible, wherever situated, as such property exists on the Effective Date or thereafter.

(6)     **"Ballot"** means the form or forms distributed to each holder of an impaired Claim entitled to vote on the Plan on which the holder indicates acceptance or rejection of the Plan.

(7)     **"Bankruptcy Case"** means the Chapter 11 cases pending for the Debtor in the Bankruptcy Court.

(8)     **"Bankruptcy Code"** means title 11 of the United States Code, shall mean 11 U.S.C. §101 et seq., as now in effect or hereafter amended, as applicable to the Bankruptcy Cases.

(9)    **"Bankruptcy Court"** means the United States Bankruptcy Court for the Middle District of Florida.

(10)    **"Bankruptcy Rules"** means, collectively, the Federal Rules of Bankruptcy Procedure and the local rules of the Bankruptcy Court, as now in effect or hereafter amended, as applicable to the Bankruptcy Cases.

(11)    **"Bar Date"** means the applicable bar date by which a proof of Claim must be or must have been filed, as established by an order of the Bankruptcy Court, including a Bar Date Order and the Confirmation Order.

(12)    **"Bar Date Order"** means any order of the Bankruptcy Court establishing Bar Dates for filing proofs of Claims in the Bankruptcy Cases.

(13)    **"Business Day"** means any day, other than a Saturday, Sunday or "legal holiday" (as defined in Bankruptcy Rule 9006(a)).

(14)    **"Cash"** means the legal tender of the United States of America.

(15)    **"Claim"** means a "claim," as defined in § 101(5) of the Bankruptcy Code.

(16)    **"Claims Objection Bar Date"** means, for all Claims the latest of: (a) 120 days after the Effective Date; (b) 60 days after the filing of a proof of Claim for such Claim; and (c) such other period of limitation as may be specifically fixed by the Plan, the Confirmation Order or a Final Order.

(17)    **"Class"** means a class of Claims as described in Article II.

(18)    **"Confirmation"** means the entry of the Confirmation Order on the docket of the Bankruptcy Court.

(19)    **"Confirmation Date"** means the date on which the Bankruptcy Court enters the Confirmation Order on its docket, within the meaning of Bankruptcy Rules 5003 and 9021.

(20)    **"Confirmation Hearing"** means the hearing(s) held by the Bankruptcy Court concerning Confirmation of the Plan.

(21)    **"Confirmation Order"** means the order or orders of the Bankruptcy Court confirming the Plan.

(22)    **"Creditor"** means the holder of a Claim.

(23)    **"Debtor"** means Zaraphath Academy Inc.

(24)    **"Disallowed Claim"** means any Claim disallowed by Final Order, the Confirmation Order or a Claim that is listed on the Debtor's Schedules as disputed,

contingent or unliquidated, and such Disallowed Claims shall be expunged in their entirety and not enforceable against the the Debtor or their property.

(25)   **"Effective Date"** means a day, as determined by the Debtor that is the Business Day as soon as reasonably practicable after all conditions to the Effective Date have been met or waived.

(26)   **"Entity"** means an individual, partnership, corporation, joint-stock company, unincorporated company or association, business trust, limited partnership, limited liability company or other business entity.

(27)   **"Equity Claim"** means a legal, equitable or contractual Claim arising from any share or other stock ownership interest in the Debtor.

(28)   **"Estate"** means the estates created for the Debtor in the Bankruptcy Cases pursuant to § 541 of the Bankruptcy Code.

(29)   **"Executory Contract or Unexpired Lease"** means a contract or lease to which the Debtor is a party that is subject to assumption, assumption and assignment or rejection under § 365 of the Bankruptcy Code.

(30)   **"Final Order"** means an order or judgment of the Bankruptcy Court or other court of competent jurisdiction, as entered on the docket in the Bankruptcy Cases or the docket of any other court of competent jurisdiction, that has not been reversed, stayed, modified or amended, and as to which the time to appeal or seek certiorari or move for a new trial, reargument or rehearing has expired, and no appeal or petition for certiorari or other proceedings for a new trial, reargument or rehearing has been timely taken, or as to which any appeal that has been taken or any petition for certiorari that has been timely filed has been withdrawn or resolved by the highest court to which the order or judgment was appealed or from which certiorari was sought or the new trial, reargument or rehearing has been denied or has resulted in no modification of such order.

(31)   **"General Unsecured Claim"** means an Unsecured Claim that is not an Administrative Claim, a Cure Amount Claim, an Equity Claim, a Priority Claim, a Priority Tax Claim, or a Secured Claim.

(32)   **"Interest"** means: (a) any share or other ownership interest in the Debtor, whether or not transferable or denominated "stock," or similar security and (b) any Equity Claim.

(33)   **"IRC"** means the Internal Revenue Code, as now in effect or hereafter amended.

(34)   **"Petition Date"** means July 21, 2021.

(35)   **"Plan"** means this Chapter 11 Subchapter V Plan for the Debtor, as the same may be amended, modified or supplemented.

(36)   **"Priority Claim"** means a Claim against the Debtor that is entitled to priority in payment pursuant to § 507(a) of the Bankruptcy Code that is not an Administrative Claim or a Priority Tax Claim.

(37)   **"Priority Tax Claim"** means a Claim arising under federal, state or local Tax laws that is entitled to priority in payment pursuant to § 507(a)(8) of the Bankruptcy Code.

(38)   **"Professional"** means any professional employed in the Bankruptcy Cases pursuant to §§ 327 or 1103 of the Bankruptcy Code or any Professional or other entity seeking compensation or reimbursement of expenses in connection with the Bankruptcy Cases pursuant to § 503(b)(4) of the Bankruptcy Code.

(39)   "**Professional Fee Claims**" mean the Claims of (a) any Professional in the Bankruptcy Cases pursuant to §§ 330 or 1103 of the Bankruptcy Code or (b) any Professional or other Entity seeking compensation or reimbursement of expenses in connection with the Bankruptcy Cases pursuant to §§ 503(b)(3), 503(b)(4) or 503(b)(5) of the Bankruptcy Code.

(40)   **"Recovery Actions"** means, collectively and individually, preference actions, fraudulent conveyance actions, rights of setoff and other claims or causes of action under Chapter 5 of the Bankruptcy Code and other bankruptcy or non-bankruptcy law.

(41)   **"Schedules"** means the schedules of assets and liabilities and the statements of financial affairs filed by the Debtor, as required by § 521 of the Bankruptcy Code, as the same may have been or may be amended, modified or supplemented.

(42)   **"Secured Claim"** means a Claim against the Debtor for extensions of credit to the Debtor that is secured by a lien on property in which the Estate has an interest or that is subject to setoff under § 553 of the Bankruptcy Code, to the extent of the value of the holder of such Claim's interest in such Estate's interest in such property or to the extent of the amount subject to setoff, as applicable, as determined pursuant to §§ 506(a) and, if applicable, 1129(b) of the Bankruptcy Code.

(43)   **"Tax"** means: any net income, alternative or add-on minimum, gross income, gross receipts, sales, use, ad valorem, value added, transfer, franchise, profits, license, property, environmental or other tax, assessment or charge of any kind whatsoever (together in each instance with any interest, penalty, addition to tax or additional amount) imposed by any federal, state, local or foreign taxing authority.

(44)   **"Voting Deadline"** means the deadline for submitting Ballots to accept or reject the Plan in accordance with § 1126 of the Bankruptcy Code that is specified in the the Ballots or related solicitation documents approved by the Bankruptcy Court.

**1.2    Rules of Interpretation and Computation of Time**

**a.    Rules of Interpretation**

For purposes of the Plan, unless otherwise provided herein: (i) whenever from the context it is appropriate, each term, whether stated in the singular or the plural, will include both the singular and the plural; (ii) unless otherwise provided in the Plan, any reference in the Plan to a contract, instrument, release or other agreement or document being in a particular form or on particular terms and conditions means that such document will be substantially in such form or substantially on such terms and conditions; (iii) any reference in the Plan to an existing document means such document as it may have been or may be amended, modified or supplemented pursuant to the Plan or Confirmation Order; (iv) any reference to a Creditor includes that entity's successors and assigns; (v) all references in the Plan to Sections and Articles are references to Sections and Articles of the Plan; (vi) the words "herein," "hereunder" and "hereto" refer to the Plan in its entirety rather than to a particular portion of the Plan; (vii) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of the Plan; (viii) subject to the provisions of any contract, instrument, release or other agreement or document entered into or delivered in connection with the Plan, the rights and obligations arising under the Plan will be governed by, and construed and enforced in accordance with, federal law, including the Bankruptcy Code and the Bankruptcy Rules; and (ix) the rules of construction set forth in § 102 of the Bankruptcy Code will apply.

**b.    Computation of Time**

In computing any period of time prescribed or allowed by the Plan, the provisions of Bankruptcy Rule 9006(a) will apply.

**ARTICLE II**
**CLASSES OF CLAIMS AND INTERESTS**

All Claims and Interests, except Administrative Claims and Priority Tax Claims, are placed in the following Classes.  In accordance with § 1123(a)(1) of the Bankruptcy Code, Administrative Claims and Priority Tax Claims, as described in Section 3.1, have not been classified and thus are excluded from the Classes.  A Claim or Interest is classified in a particular Class only to the extent that the Claim or Interest qualifies within the description of that Class and is classified in other Classes to the extent that any remainder of the Claim or Interest qualifies within the description of such other Classes.

Class 1 shall consist of all Secured Tax Claims of the Internal Revenue Service.

Class 2 shall consist of Priority Claims, including the claims of the that are entitled to priority under §§ 507(a)(3) or 507(a)(4) of the Bankruptcy Code.

Class 3 shall consist of the Unsecured Claim of Regions Bank.

Class 4 shall consist of the Unsecured Claim of the Florida Department of Agriculture and Consumer Services.

Class 5 shall consist of all Interests in the Debtor.

## ARTICLE III
## TREATMENT OF CLAIMS AND INTERESTS

**3.1    Unclassified Claims**

**a.        Payment of Administrative Claims**

**(i)    Administrative Claims in General**

Except as otherwise provided herein or unless otherwise agreed by the holder of an Administrative Claim and the Debtor, each holder of an Allowed Administrative Claim will receive from the Debtor, in full satisfaction of its Administrative Claim, Cash equal to the allowed amount of such Administrative Claim either (A) on the Effective Date or (B) if the Administrative Claim is not allowed as of the Effective Date, within 30 days after the date on which (i) an order allowing such Administrative Claim becomes a Final Order or (ii) a stipulation of amount is executed by the Debtor and the holder of the Administrative Claim.

**(ii)    Ordinary Course Liabilities**

Allowed Administrative Claims based on liabilities incurred by the Debtor in the ordinary course of its business will be paid by the Debtor pursuant to the terms and conditions of the particular transaction giving rise to such Administrative Claims.

**(iii)    Bar Dates for Administrative Claims**

Except as otherwise provided herein, requests for payment of Administrative Claims must be filed in accordance with Bankruptcy Rule 3071-1.  Holders of Administrative Claims that are required to file and serve a request for payment of such Administrative Claims and that do not file and serve such a request by such date will be forever barred from asserting such Administrative Claims against the Debtor, or their property and such Administrative Claims will be deemed waived and released as of the Effective Date.

**3.2    Unimpaired Classes of Claims**

The following constitute unimpaired Claims, and each holder thereof is conclusively presumed to have accepted the Plan and is not entitled to vote on the Plan.

**a.    Class 1 (Secured Tax Claims of the Internal Revenue Service):**

In satisfaction of its Allowed Class 1 Claim in the amount of $595,467.08, beginning on the date that is the first annual quarter of the Effective Date, the Internal Revenue Service shall

receive quarterly payments of principal, currently projected at $37,216.70 per quarter, plus allowable interest. The Class 1 Secured Claim shall bear interest in accordance with the current rate of the Internal Revenue Service. The Class 1 Claim shall be paid in full on or before the 5th anniversary of the Petition Date: to wit July 21, 2026. For the avoidance of doubt, if the Plan is Confirmed on June 10, 2022 and becomes Effective on or before June 30, 2022, then the first quarterly distribution shall be made on July 10, 2022, with subsequent payments on October 10, 2022, January 10, 2023, April 10, 2023, July 10, 2023, etc . . .

The Internal Revenue Service shall retain its lien on the Debtor's personal property until the Class 1 claim has been paid in full.

The Debtor shall be responsible for making all required payments to Class 1, and such payments shall not be made via the Subchapter V Trustee.

Class 1 is deemed unimpaired and is ineligible to vote on the Plan.

**b.       Class 2 (Priority Tax Claims of the Internal Revenue Service):**

Pursuant to § 1129(a)(9)(C) of the Bankruptcy Code, unless otherwise agreed, the Internal Revenue Service will receive, in full satisfaction of its Allowed Priority Tax Claim in the amount of $222,125.06, quarterly payments of principal, currently projected at $13,882.82, plus allowable interest. The Class 2 Claim shall bear interest in accordance with the current rate of the Internal Revenue Service. Quarterly payments shall begin on the date that is the first annual quarter of the Effective Date and ending on or before 5 years after the Petition Date: to wit July 21, 2026. For the avoidance of doubt, if the Plan is Confirmed on June 10, 2022 and becomes Effective on or before June 30, 2022, then the first quarterly distribution shall be made on July 10, 2022, with subsequent payments on October 10, 2022, January 10, 2023, April 10, 2023, July 10, 2023, etc . . .

The Debtor shall be responsible for making all required payments to Class 2, and such payments shall not be made via the Subchapter V Trustee.

**c.       Class 3 (Regions Bank):**

Class 3 consists of a $200,000 PPP loan from Regions Bank. Regions Bank reports that it shall fully recommend forgiveness of the $200,000 loan. Regions Bank also states that the Small Business Association has not yet established a process to review forgiveness applications for loans such as the Debtor's loan.

The Debtor fully expects the loan to be forgiven as the Debtor has complied with the requirements for forgiveness and has presented documentation to Regions showing that the $200,000 loan was used solely for payroll purposes.

See Schedule III.3.2.c for the forgiveness application and correspondence from Regions Bank.

d.     **Class 4 (The Florida Department of Agriculture and Consumer Services):**

The Debtor shall continue to fund the settlement agreement entered into between Zarephath Academy Inc. in accordance with its terms.

The Debtor shall be responsible for making all required payments to Class 4, and such payments shall not be made via the Subchapter V Trustee.

See Schedule III.3.2.d for a copy of the Settlement Agreement with the FDACS.

**3.3     Impaired Classes of Claims and Interests**

The following constitute impaired Claims and, except as otherwise noted, each holder thereof is entitled to vote on the Plan.

**Class 5 (Interests in the Debtor):**

Holders of Class 5 Interests will receive no distributions under the Plan.

### ARTICLE IV
### MEANS FOR IMPLEMENTATION OF THE PLAN/FEASIBILITY

**4.1     Continued Operations**

First and foremost, the Debtor has a single creditor - the IRS.  Under applicable law, the Debtor must satisfy the IRS' claims on or before July 21, 2026.  To that end, the Debtor shall make 16 quarterly payments to the IRS of approximately $52,000 each.  Funds available for payment of the IRS' claims shall come from operations and the reduction in payroll costs through receipt of grant money through the Emergency Non-Public Assistance School Program.

a.     **School Operations[2]:**

For fiscal years 2017, 2018 and 2019 the Debtor' gross revenues were $1,226,604, $858,810, and $1,792,869, respectively.  Currently the Debtor has 235 students with an average tuition cost of $7,000 per student, resulting in approximately $1,645,000 in revenues year for the 2021-2022 school year.[3]

The Debtor also received $24,000 per month from the Florida Nutrition Program resulting in an additional $288,000 for the 2021-2022 school year, which is based on a 9 month school calendar; plus the Debtor is also engaged in the Florida Summer Nutrition Program,

---

[2]     The Debtor's budget, financials, and related information is attached hereto as Schedule IV.4.1.a

[3]     The Debtor estimates that it will have 250 students for the 2022-2023 school year, which will result in revenues of $1,750,000.  The Debtor has implemented procedures to ensure that all scholarships are checked and rechecked to make sure all scholarship funds are collected.

which is anticipated to generate revenue of approximately $180,000. Included in Schedule IV.4.1.a is information on the Florida Summer Nutrition Program from 2021.

The Debtor projects total revenue for calendar year 2022 of $2,011,249.

The Debtor has made efforts to reduce expenses and projects total expenses for 2022 calendar year, to be $1,764,713, which includes, two plan payments of $52,000 to the IRS and a payment of $50,000 in attorneys fees.

Thus, even with the one-time costs of approximately $150,000, the Debtor projects surplus funds of $246,535.

Also, it is important to note that for fiscal year 2017 the Debtor' gross revenues were $1,226,604 and for 2018 they were $858,810. This decrease in revenue was the result of missed scholarship deadlines. The Debtor has implemented procedures to ensure that all scholarships are checked and rechecked to avoid the mistake of 2018.

**b.    Emergency Non-Public Assistance School Program (EANS)[4]:**

The Debtor was awarded $789,020 in May 2021 and an additional $680,628 in 2022 for a total of $1,469,648 in EANS grant money.

The EANS program has allowed for the transfer of teacher salaries from the Debtor's operations to EANS resulting in monthly savings of approximately $38,000 per month for March, April and May 2022, or $114,000 through the 2022 School year. See Schedule IV.4.1.b, which reflect payroll costs in November 2021 of $58,409 compared to costs of $20,278 for March 2022; also included in Schedule IV.4.1.b is a summary of EANS payments.

The shift of employees to the EANS program will continue for the 2022-2023 school year and the 2023-2024 school year, resulting in annual payroll reductions of at least $342,000 per school year until the entire $1,469,648 has been expended.

This savings in payroll costs is sufficient in and of itself to insure all payments to the IRS.

**4.2    Corporate Action**

The entry of the Confirmation Order shall constitute authorization for the Debtors to take or to cause to be taken all company actions necessary or appropriate to consummate and implement the provisions of the Plan prior to, on, and after the Effective Date, and all such actions taken or caused to be taken shall be deemed to have been authorized and approved by the Bankruptcy Court. All such actions shall be deemed to have occurred and shall be in effect pursuant to applicable non-bankruptcy law and the Bankruptcy Code, without any requirement of further action by the shareholders or directors of the Debtors.

---

[4]    The Debtor's budget is attached hereto as Schedule IV

Upon the effective date the Board of Directors shall be reformed with the following Board Members:

**Dr. Jerry Brant,** is President of the Debtor and essential to the continued operation of the Debtor.  In short, Dr. Brant is irreplaceable.

**Keith E. Johnson,** CPA, CIA, CISA, is owner of Keith E. Johnson CPA PA in Jacksonville, FL, a full-service CPA firm providing accounting, internal and external auditing, consulting, and tax services to individuals, businesses, and non-profits. Keith has been practicing since 1997**.**

**Gloreatha "Glo" Smith,** MBA, is a director at Northwell Health.  Glo graduated with a bachelor's degree, Business Management, Oct. 31, 2007, University of Phoenix, and an MBA, Jun 30, 2009, University of Phoenix.    Glo has three decades of public, social and entrepreneurship experience. Glo is a business and political consultant that has worked with candidates, non and for-profit companies, faith based agencies and numerous community organizations.

**Ricky B. Wallace, CEO, MBA,** Ricky has grown child welfare and mental health organizations.    He is an accomplished leader, who increased revenues, expanded services, recreated business models to mirror service demands, engaged in public policy initiatives, and effectively managed organizations through visionary leadership, effective team building, strategic planning and plan implementation.  Ricky also has significant accounting experience to assist with improving the Debtor's financial information management and accounting.

**Jessica Leonard,** is a certified bookkeeper and financial planner who will assist with the rehabilitation of the Debtor's financial statements and budgets.

### 4.3    Finance Committee for Plan Payments

In connection with the reformation of the Board of Directors, the Debtors shall establish a Finance Committee for Plan Payments comprised of Dr. Jerry Brant, Keith Johnson and Ricky Wallace. The Finance Committee will be bestowed with direct authorization to direct payments to the IRS and sequester funds to insure quarterly availability of funds for said plan payments.

To that end, the Debtor shall establish a separate holding account solely for the Plan payments to be made to the IRS.

Additionally, the Debtor has or will transfer the initial Plan payment of approximately $52,000 to to the IOLTA Account of the Law Offices of Eric N. McKay (the "Trust Account") in compliance with the Court's Order Scheduling Confirmation Hearings (Doc. # 133).

With the initial payment to the IRS set-aside in the Trust Account, the Debtor will be able to likewise set funds aside in advance of the due date for Plan payments because revenue becomes available to the Debtor in September, November, February and April.

**4.4    Preservation of Rights of Action**

Except as provided in the Plan or in any contract, instrument, release or other agreement entered into or delivered in connection with the Plan, in accordance with § 1123(b) of the Bankruptcy Code, the Debtor will retain and may enforce any claims, demands, rights and causes of action that the Debtor, or its Estate, may hold, including the Recovery Actions, to the extent not expressly released under the Plan.  The Debtor may pursue such retained claims, demands, rights or causes of action, as appropriate, in accordance with the best interests of the Debtor holding such claims, demands, rights or causes of action.

## ARTICLE V
## TREATMENT OF EXECUTORY CONTRACTS AND LEASES

**5.1    Executory Contracts or Leases to Be Assumed or Assumed and Assigned**

    **a.    Assumption and Assignment Generally**

The Debtor has no Executory Agreements.

**5.2    Insurance Policies and Agreements**

The Debtor does not believe that the agreements for the insurance policies or insurance agreements entered into prior to the Petition Date constitute Executory Contracts.  To the extent that such insurance policies or agreements are considered to be executory contracts, then, notwithstanding anything contained in this Article V to the contrary, the Plan will constitute a motion to assume and assign such insurance policies and agreements, and, subject to the occurrence of the Effective Date, the entry of the Confirmation Order will constitute approval of such assumption and assignment pursuant to § 365(a) of the Bankruptcy Code.  Unless otherwise determined by the Bankruptcy Court pursuant to a Final Order or agreed to by the parties thereto prior to the Effective Date, no payments are required to cure any defaults of the Debtor existing as of the Confirmation Date with respect to each such insurance policy or agreement.

## ARTICLE VII
## PROCEDURES FOR RESOLVING DISPUTED CLAIMS

**7.1    Prosecution of Objections to Claims**

**a.    Objections to Claims**

All objections to Claims must be filed and served on the holders of such Claims by the Claims Objection Bar Date.  If an objection has not been filed by the Claims Objection Bar Date to a proof of Claim or a scheduled Claim that is not listed in the applicable Debtor's Schedules as disputed, contingent, or unliquidated, the Claim to which the proof of Claim or scheduled Claim relates will be treated as an Allowed Claim if such Claim has not been allowed earlier and is not

a Disallowed Claim pursuant to being listed in the Schedules as disputed, contingent, or unliquidated.

**b.      Authority to Prosecute Objections**

After the Effective Date, only the Debtor will have the authority to file, settle, compromise, withdraw or litigate to judgment objections to Claims, including any Claim that is then pending.  After the Effective Date, the Debtor may settle or compromise any Disputed Claim without notice, hearing or approval of the Bankruptcy Court.  This grant of authority to the Debtor will not limit the right of the U.S. Trustee or any other party in interest to object to Professional Fee Claims.

**7.3      Treatment of Disputed Claims**

Except as otherwise provided herein, no payments or distributions will be made on account of a Disputed Claim until such Claim becomes an Allowed Claim, if ever, except that the undisputed portion of a Disputed Claim may be paid in the discretion of the Debtor if the disputed portion is less than 10% of the total claim.

**ARTICLE VIII**
**CONDITIONS PRECEDENT TO EFFECTIVE DATE**

The Effective Date will not occur and the Plan will not be consummated unless and until the Confirmation Order shall have become a Final Order, and all other actions, documents, consents and agreements necessary to implement the Plan will have been effected, obtained and/ or executed, and the Debtor provides notice of the Effective Date.

**ARTICLE IX**
**CRAMDOWN**

The Debtor requests Confirmation under § 1129(b) of the Bankruptcy Code with respect to: (a) any impaired Class that does not accept the Plan pursuant to § 1126 of the Bankruptcy Code; and (b) any Class that is deemed to have not accepted the Plan pursuant to § 1126(g) of the Bankruptcy Code.  The Debtor reserves the right to modify the Plan to the extent, if any, that Confirmation pursuant to § 1129(b) of the Bankruptcy Code requires modification.

**ARTICLE X**
**DISCHARGE, TERMINATION AND INJUNCTION**

**10.1    Discharge of Claims**

a.      Except as provided in the Plan or the Confirmation Order, the rights afforded under the Plan and the treatment of Claims under the Plan will be in exchange for and in complete satisfaction, discharge and release of all Claims arising on or before the Effective Date,

including any interest accrued on Claims from the Petition Date.  Except as provided in the Plan or, in the Confirmation Order, Confirmation will, as of the Effective Date, discharge the Debtor from all Claims or other debts that arose on or before the Effective Date, and all debts of the kind specified in §§ 502(g), 502(h) or 502(i) of the Bankruptcy Code, whether or not (A) a proof of Claim based on such debt is filed or deemed filed pursuant to § 50l of the Bankruptcy Code, (B) a Claim based on such debt is allowed pursuant to § 502 of the Bankruptcy Code, or (C) the holder of a Claim based on such debt has accepted the Plan.

b.      In accordance with the foregoing, except as provided in the Plan or the Confirmation Order, the Confirmation Order will be a judicial determination, as of the Effective Date, of a discharge of all Claims and other debts and liabilities against the Debtor, pursuant to §§ 524 and 1141 of the Bankruptcy Code, and such discharge will void any judgment obtained against the Debtor at any time, to the extent that such judgment relates to a discharged Claim.

**10.2    Injunction**

All Entities that have held, currently hold or may hold a Claim or other debt or liability of the Debtor that is discharged, released, waived, settled or deemed satisfied in accordance with the Plan will be permanently enjoined from taking any of the following actions on account of any such Claims: (i) a commencing or continuing in any manner any action or other proceeding against the Debtor, or its property, other than to enforce any right pursuant to the Plan to a distribution; (b) enforcing, attaching, collecting or recovering in any manner any judgment, award, decree or order against the Debtor, or its property, other than as permitted pursuant to (a) above; (c) creating, perfecting or enforcing any lien or encumbrance of any kind against the Debtor, or its property; (d) asserting a setoff, right of subrogation or recoupment of any kind against any debt, liability or obligation due to the Debtor; and (e) commencing or continuing any action, in any manner, in any place that does not comply with or is inconsistent with the Plan. Nothing herein is intended to bar an appeal of the Confirmation Order.

## ARTICLE XI
## RETENTION OF JURISDICTION

Notwithstanding the entry of the Confirmation Order and the occurrence of the Effective Date, the Bankruptcy Court will retain such jurisdiction over the Bankruptcy Case after the Effective Date as is legally permissible.

## ARTICLE XII
## MISCELLANEOUS PROVISIONS

**12.1    Modification of the Plan**

Subject to the restrictions on modifications set forth in § 1127 of the Bankruptcy Code the Debtor reserve the right to alter, amend or modify the Plan before its substantial consummation.

## 12.2     Severability of Plan Provisions

If, prior to Confirmation, any term or provision of the Plan is held by the Bankruptcy Court to be invalid, void or unenforceable, the Bankruptcy Court will have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision then will be applicable as altered or interpreted; provided, however, that any such alteration or interpretation must be in form and substance acceptable to the Debtor and the person or entity directly affected by such provision. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of the Plan will remain in full force and effect and will in no way be affected, impaired or invalidated by such holding, alteration or interpretation.   The Confirmation Order will constitute a judicial determination and will provide that each term and provision of the Plan, as it may have been altered or interpreted in accordance with the foregoing, is valid and enforceable.

## 12.3     Successors and Assigns

The rights, benefits and obligations of any Entity named or referred to in the Plan will be binding on, and will inure to the benefit of, any heir, executor, administrator, successor or assign of such Entity.

## 12.4     No Post-Petition Interest; Penalties, Damages or Fines.

Except as expressly stated in this Plan, or allowed by Final Order, no interest, penalties, late charges or costs arising after the Petition Date are to be allowed on any Claim.

## 12.5     No Attorneys' Fees.

No attorneys' fees shall be paid with respect to any Allowed Claim except as specified herein or as allowed by Final Order.

## 12.6     Further Assurance.

If at any time the Debtor shall consider or be advised that any further releases or assurances are reasonably necessary or desirable to carry out the provisions hereof and the transactions contemplated herein, the Debtor or Creditors, as the case may be, shall, upon reasonable request, execute and deliver any and all documents and assurances, and do all things necessary or appropriate to carry out fully the provisions of this Plan.

## 12.7     Costs of Enforcement.

If the Debtor are required to initiate litigation or a contested proceeding to enforce the provisions of this Plan against any holder of a Claim, the Debtor shall be entitled to recover from such claim holder all reasonable attorney fees and costs incurred in such effort, including appellate fees and costs.

**12.8    Section 1146 Exemption:**

Pursuant to § 1146(c) of the Bankruptcy Code, the making or delivery of any instrument of transfer pursuant to, in implementation of, or as contemplated by this Plan, or the revesting, transfer, or sale of any real or personal property of the Debtor pursuant to, in implementation of, or as contemplated by this Plan, shall not be taxed under any state or local law imposing a stamp tax, transfer tax, or similar tax or fee.   This exemption shall apply to any deed in lieu of foreclosure given by Debtor to implement the surrender of property contemplated by this Plan.

**12.9    Default by Debtor.**

Except as otherwise provided herein, a default by the Debtor occurs only when a breach of the terms of this Plan is not cured within 20 days of the receipt by the Debtor of notice of such breach.   The notice must be written and from the party affected by the breach.   A breach that is not timely cured shall be a default under this Plan.   Unless the Debtor has defaulted under this Plan, no Entity may proceed with litigation against the Debtor or their property.

**12.13    Closing of DIP Bank Account**

Closing of DIP Bank Accounts:   Following confirmation, the debtor in possession bank accounts may be closed and the Debtor shall be entitled to purchase or sell property, incur debt or engage in any investment or business activity which they deem appropriate without the necessity of obtaining Bankruptcy Court approval or modification of the Plan.   Any income earned by the Debtor following the entry of the Confirmation Order shall not be deemed property of the Estate.

**12.14    Closing of the Bankruptcy Case**

The Confirmation Order shall provide that the monthly payment of Allowed Claims pursuant to the Plan shall not give rise to U.S. Trustee fees, of Subchapter V fess, and that the Bankruptcy Case shall be closed upon the resolution of Claim objections to Disputed Claims and that the Debtor shall make all plan payments.

**12.15    Service of Documents**

Any pleading, notice or other document required by the Plan or Confirmation Order to be served on or delivered to the Debtor must be sent by overnight delivery service, facsimile transmission, courier service or messenger to:

Zarephath Academy Inc.
1028 E. 10th Street
Jacksonville, FL 32206

– and –

Eric N. McKay, Esq.
The Law Offices of Eric N. McKay

3948 3rd Street South, Ste 297
Jacksonville, Beach Florida 32250


**ZAREPHATH ACADEMY INC.**


By     */s/Jerry Brany*
           Jerry Brant


**THE LAW OFFICES OF ERIC N. MCKAY**


By     */s/ Eric N. McKay*
           Eric N. McKay


Florida Bar No. 0010215
3948 3rd Street South, Suite 297
Jacksonville Beach, Florida, 32250-5847
(904) 651-8256
eric@ericmckaylaw.com

Attorney for Zarephath Academy Inc.


## Certificate of Service


I HEREBY CERTIFY that on April 6, 2022, a true and correct copy of the foregoing has been furnished by CM/ECF Electronic Mail to:


Scott.E.Bomkamp@usdoj.gov
United States Trustee - TPA USTPRegion21.TP.ECF@USDOJ.GOV
and all other parties consenting to electronic service

and, by Regular U.S. Mail to:
Internal Revenue Service, Post Office Box 7346, Philadelphia, PA 19101-7346;
United States Securities &Exchange Commission, 950 East Paces Ferry Road, N.E., Suite 900, Atlanta, GA30326-1382
State of Florida, Department of Revenue, PO Box 6668, Tallahassee, FL 31314-6668;
All Parties in Interest that have not consented to electronic service.


                          */s/ Eric N. McKay*
                               Attorney

**Exhibit B**

**UNITED STATES BANKRUPTCY COURT**
**MIDDLE DISTRICT OF FLORIDA**
**JACKSONVILLE DIVISION**

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11 |
| ZAREPHATH ACADEMY INC., | ) | Case No. 3:21-bk-01792 |
| | ) | |
| | ) | Jointly Administered with |
| APOSTOLIC ASSEMBLIES OF JESUS | ) | Case No. 3:21-bk-01793 |
| CHRIST, INC. | ) | |
| | ) | |
| Debtors. | ) | |

**SCHEDULE OF PLAN PAYMENTS**

In accordance with the Fourth Amended Plan of Reorganization dated April 6, 2022 (Doc. No. 148) (the "Plan"), as modified and confirmed, ZAREPHATH ACADEMY INC. (the "Debtor") shall make the following plan payments:[1]

**On or before July 21, 2022**

| | |
|---|---|
| Class 1 | $37,216.70 |
| Class 2 | $11,254.71 |
| Class 5 | $2,628.09 |

**On or before October 21, 2022**

| | |
|---|---|
| Class 1 | $37,216.70 |
| Class 2 | $11,254.71 |
| Class 5 | $2,628.09 |

**On or before January 21, 20223**

---

[1]     Subject to change based on allowable interest.

| | |
|---|---|
| Class 1 | $37,216.70 |
| Class 2 | $11,254.71 |
| Class 5 | $2,628.09 |

**On or before April 21, 2023**

| | |
|---|---|
| Class 1 | $37,216.70 |
| Class 2 | $11,254.71 |
| Class 5 | $2,628.09 |

**On or before July 21, 2023**

| | |
|---|---|
| Class 1 | $37,216.70 |
| Class 2 | $11,254.71 |
| Class 5 | $2,628.09 |

**On or before October 21, 2023**

| | |
|---|---|
| Class 1 | $37,216.70 |
| Class 2 | $11,254.71 |
| Class 5 | $2,628.09 |

**On or before January 21, 2024**

| | |
|---|---|
| Class 1 | $37,216.70 |
| Class 2 | $11,254.71 |
| Class 5 | $2,628.09 |

**On or before April 21, 2024**

| | |
|---|---|
| Class 1 | $37,216.70 |
| Class 2 | $11,254.71 |
| Class 5 | $2,628.09 |

**On or before July 21, 2024**

| | |
|---|---|
| Class 1 | $37,216.70 |
| Class 2 | $11,254.71 |

| | |
|---|---|
| Class 5 | $2,628.09 |

### On or before October 21, 2024

| | |
|---|---|
| Class 1 | $37,216.70 |
| Class 2 | $11,254.71 |
| Class 5 | $2,628.09 |

### On or before January 21, 2025

| | |
|---|---|
| Class 1 | $37,216.70 |
| Class 2 | $11,254.71 |
| Class 5 | $2,628.09 |

### On or before April 21, 2025

| | |
|---|---|
| Class 1 | $37,216.70 |
| Class 2 | $11,254.71 |
| Class 5 | $2,628.09 |

### On or before July 21, 2025

| | |
|---|---|
| Class 1 | $37,216.70 |
| Class 2 | $11,254.71 |
| Class 5 | $2,628.09 |

### On or before October 21, 2024

| | |
|---|---|
| Class 1 | $37,216.70 |
| Class 2 | $11,254.71 |
| Class 5 | $2,628.09 |

### On or before January 21, 2025

| | |
|---|---|
| Class 1 | $37,216.70 |
| Class 2 | $11,254.71 |
| Class 5 | $2,628.09 |

### On or before April 21, 2025

| | |
|---|---|
| Class 1 | $37,216.70 |
| Class 2 | $11,254.71 |
| Class 5 | $2,628.09 |

**<u>On or before July 21, 2025</u>**

| | |
|---|---|
| Class 1 | $37,216.70 |
| Class 2 | $11,254.71 |
| Class 5 | $2,628.09 |

**<u>On or before October 21, 2025</u>**

| | |
|---|---|
| Class 1 | $37,216.70 |
| Class 2 | $11,254.71 |
| Class 5 | $2,628.09 |

**<u>On or before January 21, 2026</u>**

| | |
|---|---|
| Class 1 | $37,216.70 |
| Class 2 | $11,254.71 |
| Class 5 | $2,628.09 |

**<u>On or before April 21, 2026</u>**

| | |
|---|---|
| Class 1 | $37,216.70 |
| Class 2 | $11,254.71 |
| Class 5 | $2,628.09 |

**<u>On or before July 21, 2026</u>**

| | |
|---|---|
| Class 1 | $37,216.70 |
| Class 2 | $11,254.71 |
| Class 5 | $2,628.09 |